**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINDEN KELLY, on behalf of himself and others similarly situated,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 23-1301** |
| | : | |
| **TARGET CORPORATION,** | : | |
| **Defendant.** | : | |
| | : | |

# <u>O R D E R</u>

In this putative class action, Plaintiff Linden Kelly alleges that Defendant Target Corporation violated Philadelphia's Fair Workweek Employment Standards. (Doc. No. 1-1); Phila. Code §§ 9-4602-05, 9-4611. Target opposes Kelly's Motion for Class Certification. (Doc. Nos. 51, 56.) After Kelly threatened Target with a Motion for Sanctions, Target moved to amend its Opposition under Rules 6(b)(1)(B) and 11(c). (Doc. No. 57.) Unsatisfied with Target's proposed amendment, Kelly moves for sanctions. (Doc. Nos. 58, 60.) I will deny both Target's Motion for Leave to Amend and Kelly's Motion for Sanctions.

## I. BACKGROUND

A former Target employee, Kelly alleges that the Company violated Philadelphia's Fair Workweek Law by "failing to provide compliant written good faith estimates of employees work schedules; failing to pay required penalties and Predictability Pay and obtain written consent when Target changed employees' work schedules with less than 14-days' notice; changing employees' schedules at the last minute; and failing to offer new shifts to current employees before hiring new employees." (Doc. No. 1-1 at 3; <u>id.</u> ¶ 11); Phila. Code §§ 9-4602-05, 9-4611.

Kelly moved for class certification under Rules 23(a) and 23(b)(3). (Doc. Nos. 51, 52); Fed. R. Civ. P. 23. He argued that the "proposed class members share several common questions,"

including "whether Target's failure to distribute to Team Members and to post in the workplace a written policy for offering and distributing work shifts violates the Fair Workweek Law." (Doc. No. 52 at 26.)

In opposing class certification, Target argued that the Fair Workweek Law "only requires an employer to post policies *about notices of available work*, not overarching [Fair Workweek Law] policies," but that, in any event, Target did notify its employees of such overarching policies. (Doc. No. 56 at 13 (emphasis in original).) The Company explained:

> Target maintains written policies regarding [Fair Workweek Law] compliance, including a policy addressing scheduling, as well as offering and distributing work shifts. Exhibit H, "Scheduling Policy – Philadelphia". The policy is included as an addendum to Target's employee handbook that is both provided to employees in hard copy and electronically made available to employees. Exhibit D, Michael Brewer Deposition Testimony at 119:9-15 (designated as corporate representative testimony); Exhibit E, Rebecca Brotnitsky Deposition at 113:2-24.

(Id. at 14.)

Kelly contends that Target's assertion that the Scheduling Policy "is included as an addendum to Target's employee handbook that is both provided to employees in hard copy and electronically made available to employees" is false and unsupported by the testimony that Target cites. (Doc. No. 58 at 2.) On February 3, 2026 (eight days after Target filed its Opposition Brief), Kelly served on Target's Counsel a threatened Motion For Sanctions. (Doc. No. 57-1 at 3); Fed. R. Civ. P. 11. Some two weeks later, the Parties met and conferred regarding Kelly's concerns, but could not reach an agreement on how to proceed. (Doc. No. 58 at 3.)

On February 24, 2026, Target filed a "Contested Motion for Leave to Amend by Interlineation Out of Time Defendant's Memorandum of Law in Opposition to Plaintiff's Motion

for Class Certification or Rule 11 Safe Harbor Response." (Doc. No. 57.) Target asks me for leave to amend its Opposition Brief to add the following language after the contested assertion:

> Exhibit E1, Declaration of Rebecca Brotnitsky at ¶¶ 3 and 7. In particular, since the Philadelphia Fair Workweek Law has been effective, when Target has employed new Team Members, it has sent them an email from an account titled Workday@target; the email has included a list of tasks to complete in Workday. Exhibit E1, Declaration of Rebecca Brotnitsky at ¶ 7. That email has included a link to documents to review and acknowledge, including the entire Philadelphia Team Member Handbook Supplement, which has included the Scheduling Policy – Philadelphia. Id. An example of the acknowledgement in Workday, as well as the entire Philadelphia Team Member Handbook Supplement, are attached to Exhibit E1 as Exhibit D.

(Id. at 2.) "In addition to the amended narrative, Target also seeks to add to the record Proposed Exhibit E1, Declaration of Rebecca Brotnitsky, and its accompanying exhibits A-D." (Id.)

Kelly contends that Target's proposed amendment does not satisfy Rule 11's safe harbor, and is not otherwise appropriate. (See Doc. No. 60.) Kelly has thus moved for sanctions on February 25, 2026, and asks me to strike from Target's Opposition Brief: "(1) the first paragraph of Section IV(A)(2) at page 10; and (2) all of Section IV(B)(2), and order Defendant to file an amended brief with these sections stricken, and without leave to make additional arguments." The matter is fully briefed. (Doc. Nos. 57-1, 58-1, 60, 61, 64.)

On August 10, 2026, this case was reassigned to me. (Doc. No. 66.)

## II. LEGAL STANDARDS

Rule 11(b) requires attorneys to ensure that their "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). "To satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into . . . the facts . . . before filing papers with the court." Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers, 855

F.2d 1080, 1091 (3d Cir. 1988). "The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d Cir. 1991).

If the Court "determines that Rule 11(b) has been violated, [it] may impose an appropriate sanction on any attorney . . . that violated the rule." Fed. R. Civ. P. 11(c)(1). The Rule "prescribe[s] sanctions, including fees, only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988) (internal citations and quotations omitted); see also Conboy v. United States Small Bus. Admin., 992 F.3d 153, 164 (3d Cir. 2021) ("Sanctions are a drastic remedy reserved for only the most extraordinary circumstances."). "[A] party cannot file a motion for sanctions or submit such a motion to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or corrected within twenty-one days after service of the motion on the offending party." In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 99 (3d Cir. 2008) (citing Fed. R. Civ. P. 11(c)(2)).

## III. DISCUSSION

### A. Sanctions

Kelly argues that Target's assertion that the Scheduling Policy "is included as an addendum to Target's employee handbook that is both provided to employees in hard copy and electronically made available to employees" is sanctionable because it is not supported by the cited deposition testimony and it is otherwise "contradict[ed]" by "the record evidence in this case." (Doc. No. 58 at 3.) Target offers the following exchange between Plaintiff's Counsel and Brotnitsky at her deposition:

> Q: What is this document on the screen?

> A: That's the, uhm, handbook's – the Philadelphia Team Member Handbook Supplement that explains Philadelphia Workweek.
>
> Q: And are you – it explains the Philadelphia Fair Workweek?
>
> A: It has a – Philadelphia Workweek, it has, uhm, just things that are specific to Philadelphia, *maybe not just all Workweek-related*, but specific Philadelphia roles that may be different than anything that's in the official Team Member handbook.
>
> Q: And how are you familiar with this document?
>
> A: I – when we have a new Team Member orientation, I print out a copy of the Team Member handbook for them and I print out a copy of this as well for them so they can – they can access it on our Workday System, but I want them to be able to have a physical copy as well.

(Doc. No. 56-5 at 113:2–24 (emphasis added).) The one-page "document on the screen"—TARGET-KELLY 000344—did not include the Scheduling Policy, or any other information regarding the Fair Workweek Law. (Doc. No. 57-3 at 96, 126.) Yet, after that exchange, Plaintiff's Counsel asked Brotnitsky whether TARGET-KELLY 000344 was the entire, current Handbook Supplement. (Id. at 125–27.) Brotnitsky replied, "I know there's a few pages to [the Handbook Supplement]," and, moreover, that the version on display "looks like its from '19 . . . so that wouldn't be the current document." (Id. at 127.)

In these circumstances, it was not unreasonable for Target's Counsel to interpret Brotnitsky's testimony that the Handbook Supplement "has . . . things that are specific to Philadelphia, *maybe not just all Workweek-related*" to imply that the entire, current version of the Handbook Supplement contains Philadelphia-specific information, including, but not limited to, the Fair Workweek Law (such as the Scheduling Policy). (Doc. No. 56-5 at 113:10–13 (emphasis added)); Ford Motor Co., 930 F.2d at 289.

Kelly nonetheless argues that Target's interpretation of Brotnitsky's testimony is inconsistent with other record evidence, including Brotnitsky's own subsequent testimony. (Doc. Nos. 58 at 6–9, 60 at 11–13.) For instance, when questioned about TARGET-KELLY 00071, which she described as a "description of the Philadelphia Fair Workweek," Brotnitsky testified that the document was "on our wall," but not part of the Handbook Supplement. (Doc. No. 58-6 at 31.) Yet, TARGET-KELLY 00071—a poster titled "Fair Workweek"—is distinct from the Scheduling Policy, which is identified as TARGET-KELLY 00067, 00068, 00072, and 00073. (Compare Doc. No. 58-8 at 2 with Doc. No. 56-8 at 2–3 and Doc. No. 57-4 at 9–10.) To the extent that other evidence in the record may contradict Target's argument that the Scheduling Policy was part of the Handbook Supplement or otherwise distributed to employees, Rule 11 "is not an appropriate vehicle for resolving legal or factual disputes." StrikeForce Techs., Inc. v. WhiteSky, Inc., No. 13-1895, 2013 WL 5574643, at *4 (D.N.J. Oct. 9, 2013); see also Teamsters Loc. Union No. 430 v. Cement Exp., Inc., 841 F.2d 66 (3d Cir. 1988) ("Rule 11 may not be invoked because an attorney, after time for discovery, is unable to produce adequate evidence to withstand a motion for summary judgment.").

Target also cites Brewer's testimony that "when a team member is on-boarded, they're provided a handbook, they're also provided access to an electronic handbook, and then in a city like Philadelphia when they're on boarded, they will also get the supplement page, so here's your handbook, here's a supplement page that goes with it." (Doc. No. 56-4 at 119:9–15.) Although Kelly is correct that this testimony includes no reference to the Scheduling Policy, specifically, the testimony still confirms that the employee handbook itself "is both provided to employees in hard copy and electronically made available to employees." (Doc. No. 58 at 3.)

In these circumstances, Target's Counsel did not violate Rule 11. In light of that decision, I will not address Target's contention that Kelly improperly added arguments to his Motion for Sanctions, which he did not include in the version that he served upon Target's Counsel 21 days before filing. (See Doc. No. 61 at 2–3, 5 (citing O'Boyle v. Sweetapple, No. 14-81250, 2016 WL 9559919, * 2 (S.D. Fla. Feb. 22, 2016) ("A party seeking sanctions under Rule 11 must file the same motion that it served to trigger the safe-harbor period; it may not serve one motion and then file a different one.")).)

**B. Leave to Amend**

"To remove any doubt" that its counsel had "misrepresented the record," Target moves under Rule 6(b)(1)(B) for leave to amend its Class Certification Opposition Brief, and further substantiate its assertion that the Scheduling Policy was included in the Employee Handbook and distributed to employees. (Doc. No. 57.) Kelly argues that Rule 6(b)(1)(B) does not apply because Target "did not miss a deadline." (Doc. No. 60 at 24–25.) I agree with Kelly.

Rule 6(b)(1)(B) provides that when an "act may or must be done within a specified time," I "may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, Target timely opposed Kelly's Motion for Class Certification on January 26, 2026. (Doc. Nos. 51, 56; see also Doc. No. 50 (setting class certification briefing schedule).) After Kelly served its threatened Motion for Sanctions on Target's Counsel on February 3, 2026, Target moved to amend its Class Certification Opposition Brief on February 24, 2026—i.e., within the 21 days provided by Rule 11(c). (Doc. Nos. 57, 57-1 at 3); Fed. R. Civ. P. 11(c)(2). Because Kelly's Opposition Brief and subsequent Motion to Amend were both timely, no extension under Rule 6(b)(1)(B) is necessary.

In any event, given my ruling that Target's Counsel did not violate Rule 11(b), there is no need for Target to amend its Opposition Brief under Rule 11(c)(2). Rather, I will decide Kelly's Motion for Class Certification upon consideration of the Parties' original filings, without considering Target's proposed supplemental Brotnitsky Declaration and its supporting exhibits.

## IV. CONCLUSION

**AND NOW**, this 20th day of August, 2026, upon consideration of Plaintiff's Motion to Certify Class (Doc. No. 51), Defendant's Response in Opposition (Doc. No. 56), Defendant's Motion for Leave to File (Doc. No. 57), Plaintiff's Motion for Sanctions (Doc. No. 58), Plaintiff's Response in Opposition to Defendant's Motion for Leave to File (Doc. No. 60), Defendant's Response in Opposition to Plaintiff's Motion for Sanctions (Doc. No. 61), and Defendant's Reply Memorandum in Support of its Motion for Leave to File (Doc. No. 64), it is hereby **ORDERED** that:

1. Defendant's Motion for Leave to File (Doc. No. 57) is **DENIED**;
2. Plaintiff's Motion for Sanctions (Doc. No. 58) is **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.